UNITED STATES BANKRUPTCY COURT

SOUTHERN DISTRICT OF IOWA

| | |
|---|---|
| In Re:<br><br>**EAGLES CREST LEASING GROUP 1, LLC,**<br><br>Debtor and Debtor in Possession.<br><br>PO Box 5247<br>Coralville, IA   52241<br><br>EIN: xx-xxx0894 | ) Case No.: 10-06103-11<br>)<br>) Chapter 11<br>)<br>) Honorable Anita L. Shodeen<br>)<br>) *FIRST DAY MOTION*<br>) **DEBTOR'S MOTION FOR ORDER**<br>) **FOR INTERIM AND FINAL USE OF**<br>) **CASH COLLATERAL AND**<br>) **PROVIDING POST-PETITION LIENS**<br>)<br>) No Hearing Set |

Eagles Crest Leasing Group 1, LLC ("Eagles Crest" or "Debtor"), the Debtor and Debtor in Possession herein, by and through its proposed General Reorganization Counsel, Jeffrey D. Goetz, Esq., of the law firm of Bradshaw Fowler Proctor & Fairgrave, P.C., respectfully files the instant Motion for Order for Interim and Final Use of Cash Collateral and Providing Post-Petition Liens, and would show this Honorable Court as follows:

1. On December 27, 2010, the Debtor filed its Voluntary Petition under Chapter 11 of the Bankruptcy Code (the "Petition Date"). The Debtor is now duly acting as a Debtor in Possession pursuant to Bankruptcy Code §§ 1107 and 1108.

2. On or about February 16, 2005, the Debtor executed a certain "Promissory Note" ("Promissory Note") in the initial principal sum of $10,800,000.00 in favor of Bank of the West (referred to as "BOTW" or "Secured Lender"). The Debtor also executed a certain Commercial Security Agreement, an Assignment of Rents, a Construction Mortgage and other security agreements (collectively, the "Security Agreements") on February 16, 2005 that are perfected by a Financing Statement filed with the Iowa Secretary of State.

3. The Promissory Note, Security Agreements, Financing Statement and all loan documents related to the Promissory Note, Security Agreements, or Financing Statement are sometimes herein after collectively referred to as the "Loan Documents."

4. The Debtor acknowledges and agrees that, pursuant to Section 552(b) of the Bankruptcy Code and the Loan Documents, BOTW holds a validly perfected, enforceable and non-avoidable, first priority lien on and security interest in, among other things, all of Debtor's real estate (the "Property"), inventory, rents, revenues, deposit accounts, chattel paper, accounts, general intangibles, instruments, fixtures and equipment, and all proceeds thereof, all as more particularly described and evidenced by a as are more particularly described in the Loan Documents, and all revenues generated by the lease, sale, or use thereof (the "Collateral").

5. As of the Petition Date, the Debtor estimates that the balance outstanding under the Promissory Note was $10,980,609.40, plus all other costs and fees, including reasonable attorneys' fees, expenses, charges and other sums due to BOTW pursuant to the Loan Documents together with such interest, costs and fees, including reasonable attorneys' fees, expenses, charges and other charges accruing after the Petition Date to the extent permitted by Section 506(b) of the Bankruptcy Code. All of the amounts outstanding under the Promissory Note are hereinafter sometimes collectively referred to the "Existing Indebtedness."

6. The Debtor acknowledges and agrees that the obligations to BOTW constitute a legal, valid and binding obligation of the Debtor, enforceable in accordance with the terms of the Loan Documents applicable thereto, including without limitation, the Commercial Security Agreement and Construction Mortgage Document.

7. The Debtor has no objection, offset, defense or counterclaim of any kind or nature to such obligations, which, together with any amounts previously paid to BOTW on account

thereof, are not, and will not be, subject to avoidance, recovery, reduction, disallowance, disgorgement, other non-consensual treatment or subordination pursuant to the Bankruptcy Code or applicable non-bankruptcy law.

8.   The Debtor agrees that the claim of BOTW for the Existing Indebtedness is a secured claim to the extent permitted by Section 506(a) of the Bankruptcy Code, including, but not limited to, the principal amounts, interest thereon in the manner set forth in the existing Loan Documents and the costs and fees, including reasonable attorney's fees, expenses charges and other sums incurred and to be incurred by BOTW in connection with this case.

9.   All present and future proceeds from the sale of inventory, rents, deposit accounts, collection of accounts and any other sums, cash or cash equivalents received from any source constitute cash collateral pursuant to Bankruptcy Code Section 363, which comprise the cash collateral of BOTW (the "Cash Collateral").  BOTW is entitled to adequate protection of its interests in the pre-petition collateral and the Cash Collateral, and the Debtor may not use the Cash Collateral for any purpose without BOTW's consent or upon order of the Court.

10.   So long as an Order approving this Motion is in effect, Debtor shall not attempt to grant any entity, other than to BOTW, a security interest in or lien on any of the assets of the Debtor, including the Collateral, the Cash Collateral and all other assets subject to the liens held by BOTW, including the Replacement Liens provided for herein, having priority or parity with BOTW's secured interest in such assets without the prior express written consent of BOTW.

11.   The Debtor proposes that in consideration for BOTW's consent to the Debtor's use of the Cash Collateral as provided herein and as adequate protection for any diminution in the value of BOTW's security interests, the Debtor proposes to grant to BOTW:

    a.   A validly perfected first priority lien on and security interest in all of Debtor's post-petition property and proceeds thereof.  BOTW's security interest in the

Collateral shall at all times be senior to the rights of the Debtor and any successor Debtor in Possession, or trustee in this or any subsequent proceeding under the Bankruptcy Code subject only to the "Carve Out" as defined below. Upon entry of an Order granting this Motion, the post-petition security interests and liens proposed to be granted hereunder shall be valid, perfected and enforceable and shall be deemed effective and automatically perfected as of the Petition Date without the necessity of BOTW taking any further action. BOTW may, however, at its option, file continuation statements, financing statements or such documents as it deems necessary to evidence the security interests in the Collateral. Upon request by BOTW, the Debtor shall execute and deliver any and all such documents, or financing statements, as are necessary to effect and perfect BOTW's security interests as set forth in this paragraph;

      b.    a super-priority claim that shall have priority in the Debtor's bankruptcy case over all priority claims and unsecured claims against the Debtor and its estate, now existing or hereafter arising, of any kind or nature whatsoever including, without limitation, administrative expenses of the kinds specified in or ordered pursuant to §§ 105, 326, 328, 330, 331, 503(a), 503(b), 506(c), 507(a), 507(b), 546(c), 726(b) and 1114 of the Bankruptcy Code or otherwise. BOTW's super-priority claim shall be subject and subordinate only to the Carve Out and not to any other secured or unsecured claim (having administrative priority or otherwise). The Carve Out shall include any fees due to the U.S. Trustee pursuant to 28 U.S.C. Section 1930 and any professional fees and costs of the Debtor approved by the Court in an amount not to exceed $75,000.00 (the "Carve Out"). It is the intention of the Debtor to expand upon the rights of BOTW and to "prime" all administrative expenses;

      c.    replacement liens and security interests granted to BOTW which shall be valid, enforceable, fully perfected and unavoidable (the "Replacement Liens"), and no further filings or recordation or other act in accordance with any applicable local, state or federal law, rule or regulation will be necessary to create or perfect such liens and security interests. Notwithstanding the above, the Debtor shall cooperate with BOTW to execute such documents and instruments and do such other things as BOTW reasonably requests to evidence and perfect such replacement liens and security interests; and

      d.    in the event that such Replacement Liens prove insufficient to enable BOTW to realize the amount of BOTW's Cash Collateral used by Debtor pursuant to the corresponding Order of this Court, BOTW shall have (effective immediately and without the necessity of the execution by Debtor of mortgages, security agreements, or otherwise) a claim having priority over all other administrative expenses as contemplated by §§ 503(b) and 507(b) of the Code, except for the Carve Out.

12.    As part of the adequate protection of BOTW's interest in and to the Collateral and until further Order of this Court, the Debtor agrees to pay to BOTW monthly adequate assurance

payments of interest only, at the rate of 4.25% per annum, and will be applied in accordance with the Loan Documents.

13.     The Debtor proposes to establish its Debtor in Possession Accounts (the "DIP Accounts") at Wells Fargo Bank in Davenport, Iowa. The existing rights, liens and interests of BOTW shall attach to the funds deposited into the DIP Accounts with the same priority, dignity and effect that such rights, liens and interests had in the other accounts pre-petition. BOTW's security interests in such funds shall be valid, perfected, enforceable and non-avoidable without further order of the Court or the necessity of BOTW taking further action.

14.     The Debtor proposes that it shall be authorized to use Cash Collateral for the payment of its usual, ordinary, customary, regular, and necessary post-petition expenses incurred in the ordinary course of Debtor's business as set forth in Debtor's budget attached hereto as Exhibit "A" (as applicable, the "Budget") and for payment of those pre-petition claims approved and allowed by Order of the Bankruptcy Court and not otherwise. Any of the following payments shall **not** be considered ordinary and usual expenses necessary to continue the operation of the Debtor's business unless the Secured Creditor consents to any such payment in writing prior to such payment being made and provided approval of this Court is obtained : (1) operation of the Debtor's business at any fixed location other than the business premises; (2) payment of trade debt incurred prior to the commencement of this case, unless approved by Order of the Bankruptcy Court; (3) payment of any taxes owed prior to the date the Petition was filed by the Debtor; and (4) payment of any other debt incurred prior to the commencement of this case, except as provided for in Debtor's confirmed Plan. The foregoing payments are merely illustrative and are not the exclusive list of payments that will not be considered ordinary and usual expenses. Such authorization shall continue for a period extending to and including

December 27, 2010 to and including June 30, 2011, on an interim and final basis, subject to the following terms and conditions:

    a.    All proceeds received from the sale of Collateral in the ordinary course of business, and the collection of rents, accounts receivable and profits, shall be deposited in the DIP Accounts. The Debtor's expenses may not exceed the monthly sum set forth on Exhibit "A" without the prior written consent of BOTW. Only the ordinary and usual expenses necessary to continue operation of the business, incurred after the commencement of the bankruptcy case, plus the payments due to BOTW, shall be paid from the DIP Accounts, and other payments as the court shall allow from time to time.

    b.    The Debtor agrees that the ordinary and usual expenses necessary for the continued operation of the business are the expenses which the Debtor listed on Exhibit "A."

    c.    On or before February 20, 2011 the Debtor shall provide to BOTW an initial aging of all accounts receivable and accounts payable and a list of all inventory, plus total current operating expenses and total current collections as used in Exhibit "A." This report shall be updated and provided to BOTW by the 15th day of each month thereafter (the "Reports").

    d.    BOTW shall, at any time, be permitted to conduct a full inspection of the real estate property and accounts of the Debtor by visiting the Debtor's premises to inspect, verify and photocopy all such records and to inspect, appraise and document the Collateral. Debtor proposes to grant BOTW, its agents and employees, a license to enter upon all such premises for such purposes during its regular, customary and ordinary business hours. BOTW shall also have access, within five (5) business days of any request, to the Debtor and its management, personnel and advisors. Access by BOTW to residential living units occupied by lawful tenants is subject to applicable state law and the tenants' rights under their respective lease agreements.

    e.    On or before February 20, 2011, Debtor shall prepare and provide BOTW a balance sheet and income statement existing as of the filing date of Debtor's Petition. Within twenty (20) days of each successive month, Debtor shall provide an updated balance sheet and income statement along with a copy of all monthly reports provided to the Court and/or the United States Trustee.

    f.    Any debt incurred in excess of 125% of the budgeted expense shall constitute a default hereunder.

    g.    All Collateral shall be insured to its full value, and Debtor shall otherwise comply with the terms and conditions of BOTW. Evidence of insurance listing BOTW as insured mortgagee/loss payee shall be immediately provided.

      h.    If at any time the Debtor fails to make the payments required under the Promissory Notes in accordance with the loan documents, fails or ceases to properly insure the Collateral, fails to pay any local, state or federal taxes as they become due, fails to pay fees required by the U.S. Trustee or fails to comply with any other term of this Motion ("Default"), BOTW shall give the Debtor and its attorney written notice that it has fifteen (15) business days to cure such default after the mailing of written notice of such default. If the default is not cured, BOTW may seek entry of an order granting it relief from the automatic stay. Upon such termination, BOTW shall be authorized to terminate the use of Cash Collateral and take such action against the Collateral as permitted under its respective loan documents, including, without limitation, the Security Agreements and Mortgage Documents, and applicable state law.

      i.    Unless otherwise notified, all notices hereunder to Debtor, to BOTW shall be sent to the following addresses:

> Eagles Crest Leasing Group 1, LLC
> PO Box 5247
> Coralville, IA   52241
>
> Bank of the West
> 13220 California Street, 2nd Floor
> Omaha, NE   68154

with a copy to each respective counsel as follows:

For Debtor:
Jeffrey D. Goetz, Esq.
Bradshaw Fowler Proctor & Fairgrave, PC
801 Grand Avenue, Suite 3700
Des Moines, IA   50309-8004
515/246-5817
515/246-5808 FAX
goetz.jeffrey@bradshawlaw.com

For Bank of the West:
Thomas Burke, Esq.
Whitfield & Eddy, PLC
317 Sixth Avenue, Ste 1200
Des Moines, IA   50309-4195
515/288-6041
515/246-1474
burke@whitfieldlaw.com

      j.    Any termination of the automatic stay under this Stipulation and Consent Order shall apply to the above Chapter 11 case or any subsequent conversion.

    k. All rights of BOTW to seek additional adequate protection for Debtor's use of Cash Collateral, to file for relief from the automatic stay, to dismiss or to assert any other right or cause of action, or any other matter with respect to the Debtor, whether in this bankruptcy case, or otherwise, are expressly reserved. The failure or delay by BOTW to seek relief or otherwise exercise their rights and remedies under this Motion or any loan documents shall not constitute a waiver of any of the rights of BOTW.

  This Motion, the Promissory Notes, Security Agreements, Mortgage Documents and any documents and instruments required of Debtor by this Motion are, or when executed and delivered, will be valid, binding and enforceable in accordance with their respective terms upon entry of an Order approving this Motion.

  15. No representation or warranty of Debtor contained in this Motion or in any statement, instrument, or other document furnished by Debtor in connection with this Motion, or prior to this Motion contains any untrue statement of material fact or omits to state any material fact.

  16. Immediately upon entry by the Court of an Order approving this Motion, the provisions of the Motion shall be valid and binding upon and inure to the benefit of BOTW, all other creditors of the Debtor, and all other parties in interest on an interim basis. Pursuant to Fed.R.Bankr.P. 4001(d), a copy of this Motion shall be provided to any committee appointed in this case, or if no committee has been appointed to the twenty (20) largest unsecured creditors. If no objection is filed, the terms and conditions of this Motion may be approved without further order and shall be binding on all parties in interest on a final basis.

  17. The Debtor agrees to pay attorney fees incurred by BOTW, as set out in the loan documents of BOTW, to the extent authorized under Bankruptcy Code Section 506.

Therefore, the Debtor respectfully requests the Court enter an order approving the instant Motion and for such other and further relief as may be just and equitable under the circumstances.

Dated: 12/27/2010

/s/ Jeffrey Goetz
Jeffrey D. Goetz, Esq., IS# 9999366
Bradshaw Fowler Proctor & Fairgrave, PC
801 Grand Avenue, Suite 3700
Des Moines, IA 50309-8007
515/246-5817
515/246-5808 FAX
goetz.jeffrey@bradshawlaw.com

Proposed General Reorganization Counsel
for Eagles Crest Leasing Group 1, LLC,
Debtor and Debtor in Possession

CERTIFICATE OF SERVICE This document was served electronically on parties who receive electronic notice through CM/ECF as listed on CM/ECF's notice of electronic filing.

/s/     Nissa Maddalone

9

Exhibit A

Eagles Crest Leasing Group 1
Cash flow Projection

| | nov 10' | dec 10' | jan 11' | feb 11' | march 11' | april 11' | may 11' | june 11' | july 11' | aug 11' |
|---|---|---|---|---|---|---|---|---|---|---|
| **INCOME** | | | | | | | | | | |
| Gross Rent Potential | $143,500.00 | $143,500.00 | $143,500.00 | $143,500.00 | $143,500.00 | $143,500.00 | $143,500.00 | $143,500.00 | $143,500.00 | $143,500.00 |
| LESS Vacancy | (26,000.00) | (25,000.00) | (21,000.00) | (16,000.00) | (16,000.00) | (15,000.00) | (14,500.00) | (14,000.00) | (13,500.00) | (13,500.00) |
| Net Rental Income | 117,500.00 | 118,500.00 | 122,500.00 | 127,500.00 | 127,500.00 | 128,500.00 | 129,000.00 | 129,500.00 | 130,000.00 | 130,000.00 |
| Laundry Income | $1,700.00 | $1,700.00 | $1,700.00 | $1,700.00 | $1,700.00 | $1,700.00 | $1,700.00 | $1,700.00 | $1,700.00 | $1,700.00 |
| **Total Income** | **119,200.00** | **120,200.00** | **124,200.00** | **129,200.00** | **129,200.00** | **130,200.00** | **130,700.00** | **131,200.00** | **131,700.00** | **131,700.00** |
| **EXPENSES** | | | | | | | | | | |
| Advertising Expenses | 1,000.00 | 1,000.00 | 1,000.00 | 1,000.00 | 1,000.00 | 1,000.00 | 1,000.00 | 1,000.00 | 1,000.00 | 1,000.00 |
| Insurance - Property/Work Comp | 3,000.00 | 3,000.00 | 3,000.00 | 3,000.00 | 3,000.00 | 3,000.00 | 3,000.00 | 3,000.00 | 3,000.00 | 3,000.00 |
| Management Fees | 4,768.00 | 4,808.00 | 4,968.00 | 5,168.00 | 5,168.00 | 5,208.00 | 5,228.00 | 5,248.00 | 5,268.00 | 5,268.00 |
| Maintenance (Payroll) | 2,500.00 | 2,500.00 | 2,500.00 | 2,500.00 | 2,500.00 | 2,500.00 | 2,500.00 | 2,500.00 | 2,500.00 | 2,500.00 |
| Accounting (Payroll) | 3,000.00 | 3,000.00 | 3,000.00 | 3,000.00 | 3,000.00 | 3,000.00 | 3,000.00 | 3,000.00 | 3,000.00 | 3,000.00 |
| Management/Leasing (Payroll) | 2,000.00 | 2,000.00 | 2,000.00 | 2,000.00 | 2,000.00 | 2,000.00 | 2,000.00 | 2,000.00 | 2,000.00 | 2,000.00 |
| Background & Legal | 300.00 | 300.00 | 300.00 | 300.00 | 300.00 | 300.00 | 300.00 | 300.00 | 300.00 | 300.00 |
| Misc Office Expenses and Travel | 250.00 | 250.00 | 250.00 | 250.00 | 250.00 | 250.00 | 250.00 | 250.00 | 250.00 | 250.00 |
| Office Supplies | 180.00 | 180.00 | 180.00 | 180.00 | 180.00 | 180.00 | 180.00 | 180.00 | 180.00 | 180.00 |
| Repairs & Maintenance - General | 3,500.00 | 3,500.00 | 3,500.00 | 3,500.00 | 3,500.00 | 3,500.00 | 3,500.00 | 3,500.00 | 3,500.00 | 3,500.00 |
| Supplies for Repairs & Mainenance | 1,500.00 | 1,500.00 | 1,500.00 | 1,500.00 | 1,500.00 | 1,500.00 | 1,500.00 | 1,500.00 | 1,500.00 | 1,500.00 |
| Cleaning Service | 1,000.00 | 1,000.00 | 1,000.00 | 1,000.00 | 1,000.00 | 1,000.00 | 1,000.00 | 1,000.00 | 1,000.00 | 1,000.00 |
| Mowing/Lawn Care | | | | | | 3,000.00 | 2,100.00 | 2,100.00 | 2,100.00 | 2,100.00 |
| Turnover Expense | 2,500.00 | 2,500.00 | 2,500.00 | 2,500.00 | 2,500.00 | 2,500.00 | 2,500.00 | 2,500.00 | 2,500.00 | 2,500.00 |
| Snow Removal | | 1,500.00 | 3,000.00 | 3,000.00 | 1,500.00 | | | | | |
| Trash Removal | 1,000.00 | 1,000.00 | 1,000.00 | 1,000.00 | 1,000.00 | 1,000.00 | 1,000.00 | 1,000.00 | 1,000.00 | 1,000.00 |
| Cable Service | 285.00 | 285.00 | 285.00 | 285.00 | 285.00 | 285.00 | 285.00 | 285.00 | 285.00 | 285.00 |
| Exterminator | 145.00 | 145.00 | 145.00 | 145.00 | 145.00 | 145.00 | 145.00 | 145.00 | 145.00 | 145.00 |
| Utilities - House | 3,300.00 | 3,300.00 | 3,300.00 | 3,300.00 | 3,300.00 | 3,300.00 | 3,300.00 | 3,300.00 | 3,300.00 | 3,300.00 |
| Telephone and Alarm Lines | 2,000.00 | 2,000.00 | 2,000.00 | 2,000.00 | 2,000.00 | 2,000.00 | 2,000.00 | 2,000.00 | 2,000.00 | 2,000.00 |
| Water and Sewer | 2,200.00 | 2,200.00 | 2,200.00 | 2,200.00 | 2,200.00 | 2,200.00 | 2,200.00 | 2,200.00 | 2,200.00 | 2,200.00 |
| Property taxes | 19,490.00 | 19,490.00 | 19,490.00 | 19,490.00 | 19,490.00 | 20,155.00 | 20,155.00 | 20,155.00 | 20,155.00 | 20,155.00 |
| Reserve | 1,000.00 | 1,000.00 | 1,000.00 | 1,000.00 | 1,000.00 | 1,000.00 | 1,000.00 | 1,000.00 | 1,000.00 | 1,000.00 |
| **Total Expenses** | **54,918.00** | **56,458.00** | **58,118.00** | **58,318.00** | **56,818.00** | **59,023.00** | **58,143.00** | **58,163.00** | **58,183.00** | **58,183.00** |
| **NET OPERATING CASH FLOW** | 64,282.00 | 63,742.00 | 66,082.00 | 70,882.00 | 72,382.00 | 71,177.00 | 72,557.00 | 73,037.00 | 73,517.00 | 73,517.00 |
| Debt Service Payment | (68,304.99) | (68,304.99) | (68,304.99) | (68,304.99) | (68,304.99) | (68,304.99) | (68,304.99) | (68,304.99) | (68,304.99) | (68,304.99) |
| **NET CASH FLOW BEFORE REORG COSTS** | (4,022.99) | (4,562.99) | (2,222.99) | 2,577.01 | 4,077.01 | 2,872.01 | 4,252.01 | 4,732.01 | 5,212.01 | 5,212.01 |
| **NET CASH FLOW** | (4,022.99) | (4,562.99) | (2,222.99) | 2,577.01 | 4,077.01 | 2,872.01 | 4,252.01 | 4,732.01 | 5,212.01 | 5,212.01 |
| **PROJECTED CASH ON HAND** | (4,022.99) | ($8,585.98) | ($10,808.97) | ($8,231.96) | ($4,154.95) | ($1,282.94) | $2,969.07 | $7,701.08 | $12,913.09 | $18,125.10 |

Eagles Crest Leasing Group 1
Cash flow Projection

| | sept 11' | oct 11' | nov 11' | dec 11' |
|---|---|---|---|---|
| **INCOME** | | | | |
| Gross Rent Potential | $143,500.00 | $143,500.00 | $143,500.00 | $143,500.00 |
| LESS Vacancy | (13,000.00) | (13,000.00) | (13,000.00) | (13,000.00) |
| Net Rental Income | 130,500.00 | 130,500.00 | 130,500.00 | 130,500.00 |
| Laundry Income | $1,700.00 | $1,700.00 | $1,700.00 | $1,700.00 |
| **Total Income** | **132,200.00** | **132,200.00** | **132,200.00** | **132,200.00** |
| | | | | |
| **EXPENSES** | | | | |
| Advertising Expenses | 1,000.00 | 1,000.00 | 1,000.00 | 1,000.00 |
| Insurance - Property/Work Comp | 3,000.00 | 3,000.00 | 3,000.00 | 3,000.00 |
| Management Fees | 5,288.00 | 5,288.00 | 5,288.00 | 5,288.00 |
| Maintenance (Payroll) | 2,500.00 | 2,500.00 | 2,500.00 | 2,500.00 |
| Accounting (Payroll) | 3,000.00 | 3,000.00 | 3,000.00 | 3,000.00 |
| Management/Leasing (Payroll) | 2,000.00 | 2,000.00 | 2,000.00 | 2,000.00 |
| Background & Legal | 300.00 | 300.00 | 300.00 | 300.00 |
| Misc Office Expenses and Travel | 250.00 | 250.00 | 250.00 | 250.00 |
| Office Supplies | 180.00 | 180.00 | 180.00 | 180.00 |
| Repairs & Maintenance - General | 3,500.00 | 3,500.00 | 3,500.00 | 3,500.00 |
| Supplies for Repairs & Mainenance | 1,500.00 | 1,500.00 | 1,500.00 | 1,500.00 |
| Cleaning Service | 1,000.00 | 1,000.00 | 1,000.00 | 1,000.00 |
| Mowing/Lawn Care | 2,100.00 | 2,500.00 | | |
| Turnover Expense | 2,500.00 | 2,500.00 | 2,500.00 | 2,500.00 |
| Snow Removal | | | 500.00 | 1,500.00 |
| Trash Removal | 1,000.00 | 1,000.00 | 1,000.00 | 1,000.00 |
| Cable Service | 285.00 | 285.00 | 285.00 | 285.00 |
| Exterminator | 145.00 | 145.00 | 145.00 | 145.00 |
| Utilities - House | 3,300.00 | 3,300.00 | 3,300.00 | 3,300.00 |
| Telephone and Alarm Lines | 2,000.00 | 2,000.00 | 2,000.00 | 2,000.00 |
| Water and Sewer | 2,200.00 | 2,200.00 | 2,200.00 | 2,200.00 |
| Property taxes | 20,155.00 | 20,155.00 | 20,155.00 | 20,155.00 |
| Reserve | 1,000.00 | 1,000.00 | 1,000.00 | 1,000.00 |
| **Total Expenses** | **58,203.00** | **58,603.00** | **56,603.00** | **57,603.00** |
| | | | | |
| NET OPERATING CASH FLOW | 73,997.00 | 73,597.00 | 75,597.00 | 74,597.00 |
| Debt Service Payment | (68,304.99) | (68,304.99) | (68,304.99) | (68,304.99) |
| NET CASH FLOW BEFORE REORG COSTS | 5,692.01 | 5,292.01 | 7,292.01 | 6,292.01 |
| | | | | |
| NET CASH FLOW | 5,692.01 | 5,292.01 | 7,292.01 | 6,292.01 |
| PROJECTED CASH ON HAND | $23,817.11 | $29,109.12 | $36,401.13 | $42,693.14 |