# UNITED STATES BANKRUPTCY COURT

## SOUTHERN DISTRICT OF IOWA

| | | |
|---|---|---|
| In Re: | ) | Case No.:  10-6103-als11 |
| | ) | |
| **EAGLES CREST LEASING GROUP 1, LLC** | ) | Chapter 11 |
| | ) | |
| | ) | Honorable Anita L. Shodeen |
| Debtor and Debtor in Possession. | ) | |
| | ) | **DEBTOR'S PLAN OF REORGANIZATION** |
| PO Box 5247 | ) | **DATED JUNE 24, 2011** |
| Coralville, IA  52241 | ) | |
| | ) | <u>Combined Hearing on Approval of Disclosure</u> |
| EIN:  xx-xxx0894 | ) | <u>Statement and Confirmation of Plan</u> |
| | ) | Date: August 1, 2011 |
| | ) | Time: 1:30 p.m. |
| | ) | Courtroom: 1 |
| _____ | ) | |

Jeffrey D. Goetz, Esq., IS #9999366
Donald F. Neiman, Esq., IS #9999933
Bradshaw, Fowler, Proctor & Fairgrave, P.C.
801 Grand Avenue, Suite 3700
Des Moines, IA  50309-8004
515/246-5817
515/246-5808 FAX
goetz.jeffrey@bradshawlaw.com

General Reorganization Counsel

# TABLE OF CONTENTS

**ARTICLE I.**       **DEFINITIONS** ........................................................................ 1

**ARTICLE II.**      **DESIGNATION AND TREATMENT OF UNCLASSIFIED CLAIMS** ............................................................... **7**
    A.    Designation. ..................................................................... 7
        1.    Administrative Expense Claims ...................... 7
        2.    Priority Tax Claims ...................................... 8
    B.    Treatment. ...................................................................... 8
        1.    Administrative Expense Claims ...................... 8
        2.    Priority Tax Claims ...................................... 8

**ARTICLE III.**     **DESIGNATION AND TREATMENT OF IMPAIRED AND UNIMPAIRED CLASSES** ............................ **9**
    A.    Designation of Unimpaired and Impaired Classes. ................ 9
    B.    Classification and Treatment of Classes of Claims and Interests. ............... 9
    C.    Specification and Treatment of Classified Claims. ................ 9
        1.    Class 1 – Priority Non-Tax Claims. ................ 10
        2.    Class 2 – Allowed Secured Claim of Bank of the West. ........... 10
        3.    Class 3 – Allowed Convenience Class Claims. ............... 15
        4.    Class 4 – Allowed General Unsecured Creditors. ............... 16
        5.    Class 5 – Subordinated Unsecured Claims of Insiders. ............... 18
        6.    Class 6 – Equity Interests. ........................... 18
        7.    Miscellaneous Provisions. ........................... 19

**ARTICLE IV.**      **MEANS FOR IMPLEMENTATION OF THE PLAN** ................ 20
    A.    Reduction of Secured Debt Obligations. ............... 20
    B.    Change in Property Management. ............... 20
    C.    Compliance with Projections. ............... 21
    D.    Use of Excess Cash. ............... 22
    E.    Prepayments. ............... 22
    F.    Retention of Liens. ............... 22
    G.    Post-Confirmation Compensation of Professional Persons. ............... 23
    H.    All Section 1129(a)(4) Payments Subject to Bankruptcy Court Review. ............... 23
    I.    Default. ............... 24
        1.    Events of Default ............... 24
        2.    Cure of Prior Defaults ............... 25
        3.    Consequences of Default ............... 25
    J.    The Assumption or Rejection of Unexpired Leases and Executory Contracts. ............... 27
        1.    Assumption and Rejection ............... 27

2.    Reservation of Rights........................................................................... 27

K.    Proof of Claim. ............................................................................................... 27

1.    Objections to Claims and Proofs of Claim................................... 28

2.    Resolution of Disputes.................................................................. 28

3.    Settlement ...................................................................................... 28

4.    Allowed Amount ............................................................................ 29

L.    Unclaimed Funds. .......................................................................................... 29

M.    Litigation. ....................................................................................................... 29

N.    Modification/Amendment of Plan. ............................................................... 30

1.    Amendments Prior to Confirmation.............................................. 30

2.    Amendments After Confirmation.................................................. 30

3.    Effect on Claims ............................................................................ 31

O.    Reservation of Section 1129(b) Rights (Cramdown). ................................. 31

P.    Post-Confirmation Status Reports and Final Decree................................... 31

Q.    Post-Confirmation United States Trustee Fees. .......................................... 32

R.    Other Terms and Creditor Protections. ........................................................ 32

S.    Effect of Confirmation. .................................................................................. 32

T.    Binding Effect................................................................................................. 34

U.    Vesting of Property. ....................................................................................... 34

V.    Avoidance Actions ......................................................................................... 35

W.    Bar Date For Administrative Expense Claims.............................................. 35

X.    Post-Confirmation Jurisdiction. ................................................................... 36

1.    Purposes......................................................................................... 36

2.    Abstention ...................................................................................... 38

Y.    Disclosure of Identity of Officers and Directors of Reorganized Debtor.................... 38

Z.    Retirement Benefits. ...................................................................................... 39

AA.    General Provisions. ...................................................................................... 39

1.    Headings......................................................................................... 39

2.    Severability.................................................................................... 39

3.    Governing Law .............................................................................. 40

4.    Successors and Assigns.................................................................. 40

5.    Plan is Self Executing.................................................................... 40

The Debtor and Debtor in Possession herein, Eagles Crest Leasing Group 1, LLC, hereby

submits and proposes its Plan of Reorganization dated June 24, 2011 (the "Plan"), pursuant to Title 11,

United States Code § 1121(a):

## ARTICLE I.  <u>DEFINITIONS</u>

As used in this Plan, the following terms shall have the respective meanings specified below:

A.  <u>Administrative Expense Claimant</u>:  Any Person entitled to payment of an Administrative

Expense (as defined in the Bankruptcy Code).

B.  <u>Administrative Expense Claim</u>:  Any cost or Administrative Expense of the Bankruptcy

Case that is entitled to priority in accordance with Bankruptcy Code § 503(b) and 507(a)(2), including,

without limitation: any actual and necessary expenses of preserving the Debtor's estate and of operating

the Debtor's business from and after the Petition Date through and including the Confirmation Date; all

allowances of compensation and reimbursement of costs and expenses to Professional Persons, as

approved by a Final Order of the Bankruptcy Court; and any fees or charges assessed against the

Debtor's estate under Chapter 123 of Title 28 of the United States Code.

C.  <u>Allowed Claim</u>:  Any Claim against the Debtor that meets either of the following two

requirements: (1) proof of such Claim was filed on or before the Bar Date, or, if no Proof of Claim is

filed, the Claim has been or hereafter is listed by the Debtor in its schedules and statements as liquidated

in amount and not disputed or contingent as to liability, and, in either case, no objection to the allowance

of such Claim has been filed; or (2) a Claim as to which any objection has been filed and such Claim has

been allowed in whole or in part by a Final Order of the Bankruptcy Court.

D.      <u>Allowed Unsecured Claim</u>:  Any Allowed Claim that is not an Administrative Expense Claim or an Allowed Secured Claim.

E.      <u>Ballot</u>:  The form for acceptance or rejection of the Plan distributed to those Creditors entitled to vote on the Plan, as such form may be approved by the Bankruptcy Court and shall otherwise comply with the requirements of Bankruptcy Rule 3018(c).  Any Ballot which is executed by the holder of an Allowed Claim but which does not indicate an acceptance or rejection of the Plan shall be deemed to be an acceptance of the Plan.

F.      <u>Bankruptcy Case</u>:  The pending Bankruptcy Case filed by Eagles Crest Leasing Group 1, LLC on the Petition Date, in the U.S. Bankruptcy Court for the Southern District of Iowa and assigned the case number 10-06103-als11.

G.      <u>Bankruptcy Code</u>:  The United States Bankruptcy Code, 11 U.S.C. § 101, <u>et</u> <u>seq</u>., as amended.

H.      <u>Bankruptcy Court</u>:  The unit of the United States District Court for the Southern District of Iowa, constituted pursuant to 28 U.S.C. § 151, having jurisdiction over the Bankruptcy Case to the extent of any reference made pursuant to 28 U.S.C. ' 157(a), or in the event such court ceases to exercise jurisdiction over the Bankruptcy Case, such court or adjunct thereof that has jurisdiction over the Bankruptcy Case.

I.      <u>Bankruptcy Rules</u>:  The Federal Rules of Bankruptcy Procedure, as amended, as applicable to the Bankruptcy Case.

J.      <u>Bar Date</u>: April 20, 2011, which is the last date for all creditors except governmental units to timely file proofs of claim, as established by the Bankruptcy Court's Notice of Chapter 11

Bankruptcy Case, Meeting of Creditors and Deadlines, entered on the Bankruptcy Court's docket on

January 3, 2011, at Docket Item 10.

K.      Business Day:  Any day that is not a Saturday, Sunday, or legal holiday as identified in

Federal Rule of Bankruptcy Procedure 9006(a).

L.      Cash:  Cash and cash equivalents, including, but not limited to, bank deposits, checks,

wire transfers, money orders, certificates of deposit and other similar, readily marketable securities or

instruments, together with any interest earned or accrued thereon.

M.      Causes of Action:  All causes of action of any kind held by the Debtor whether or not

such causes of action are the subject of presently pending lawsuits, adversary proceedings, or appeals,

including, without limitation:  (i) causes of action belonging to the Debtor as of the Petition Date; (ii)

causes of action belonging to the Debtor that arose after the Petition Date; and (iii) rights exercisable by

the Debtor as Debtor-In-Possession pursuant to Bankruptcy Code §§ 506, 510, 544, 545, 547, 548,

549, 550, or 553.

N.      Claim:  Any right to payment from the Debtor, whether or not such right is reduced to

judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal,

equitable, secured, or unsecured, or any right to an equitable remedy for breach of performance if such

breach gives rise to a right to payment from the Debtor, whether or not such right to an equitable

remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured,

or unsecured.

O.      <u>Claims Objection Bar Date</u>:  August 31, 2011, which is the date established by the Bankruptcy Court pursuant to an order entered in this Bankruptcy Case on May 20, 2011, at Docket Item 71, by which written objections to a Proof of Claim must be filed.

P.      <u>Class</u>:  A category or group of Creditors which are substantially similar to the Claims of the other Creditors in such Class, as designated by the Plan pursuant to Bankruptcy Code §§ 1122 and 1123.

Q.      <u>Confirmation Date</u>:  (i) If no appeal of the Confirmation Order is filed, the first Business Day after the expiration of time for an appeal of the Confirmation Order; or (ii) if an appeal of the Confirmation Order has been filed, the first Business Day after the expiration of time for an appeal of the Confirmation Order, provided that no stay of the Confirmation Order pending appeal has been granted; or (iii) if an appeal of the Confirmation Order has been filed and a stay of the Confirmation Order has been granted, the first Business Day after the expiration or termination of such stay.

R.      <u>Confirmation Hearing</u>:  The duly noticed hearing held by the Bankruptcy Court on confirmation of the Plan pursuant to Bankruptcy Code § 1128, scheduled for August 1, 2011, beginning at 1:30 p.m. in Courtroom 1 of the Bankruptcy Court, pursuant to the Bankruptcy Court in the order entered on May 20, 2011, at Docket Item 71.  The Confirmation Hearing may be adjourned by the Bankruptcy Court from time to time without further notice other than the announcement of the adjourned date at the Confirmation Hearing.

S.      <u>Confirmation Order</u>:  The order entered by the Bankruptcy Court confirming the Plan in accordance with the provisions of Chapter 11 of the Bankruptcy Code.

T.     <u>Creditor</u>:  Any Person who has a Claim against the Debtor that arose on or before the

Petition Date, or a Claim against the Debtor of any kind specified in § 502(g), (h) or (i) of the

Bankruptcy Code.

U.     <u>Debtor</u>:  Eagles Crest Leasing Group 1, LLC ("ECLG").

V.     <u>Debtor in Possession</u>:  The Debtor, as Debtor in Possession, pursuant to §§ 1107 and

1108 of the Bankruptcy Code.

W.     <u>Disclosure Statement</u>:  The Disclosure Statement respecting the Plan filed by the Debtor

in the Bankruptcy Case and approved, conditionally or otherwise, by order of the Bankruptcy Court, as

containing adequate information in accordance with Bankruptcy Code § 1125, as such Disclosure

Statement may be modified, amended, or supplemented from time to time thereafter.

X.     <u>Effective Date</u>:  The first Business Day that is thirty (30) days after the Confirmation

Date.

Y.     <u>Final Order</u>:  An order or a judgment of a court which has not been reversed, stayed,

modified, or amended, and as to which (i) the time to appeal or to seek review by certiorari or rehearing

has expired and no appeal, review, certiorari, or rehearing petition has been filed; or (ii) any appeal,

review, certiorari, or rehearing proceeding that has been filed has been finally determined or dismissed,

and the time to further appeal or to seek further review by certiorari or rehearing has expired and no

further appeal, review, certiorari, or rehearing petition has been filed.

Z.     <u>Person</u>:  An individual, corporation, partnership, limited liability company, or other legal

or governmental entity.

AA.    <u>Petition Date</u>:  December 27, 2010, the date the Debtor filed its Voluntary Chapter 11

Petition for relief, commencing the Bankruptcy Case.

BB.    <u>Plan</u>:  The Debtor's Plan of Reorganization dated June 24, 2011, and any exhibits and

schedules attached thereto and any documents incorporated by reference, either in its present form or

as it may be altered, amended, or modified from time to time to the extent permitted herein or by the

Bankruptcy Code.

CC.    <u>Priority Non-Tax Claim</u>:  Any Claim entitled to priority and payment under § 507 of the

Bankruptcy Code other than Administrative Expense Claims and Priority Tax Claims.

DD.    <u>Priority Tax Claim</u>:  Any Claim entitled to priority and payment under § 507(a)(8) of the

Bankruptcy Code.  All Secured Priority Tax Claims shall be deemed Unclassified Claims and not be

classified and/or treated as Secured Claims under this Plan.

EE.    <u>Professional Person</u>:  Any attorney, accountant, or other professional:  (i) engaged by

the Debtor or any committee and approved by order of the Bankruptcy Court in the Bankruptcy Case;

or (ii) engaged by the Reorganized Debtor after the Effective Date.

FF.    <u>Reorganized Debtor</u>:  Eagles Crest Leasing Group 1, LLC on and after the

Confirmation Date.

GG.    <u>Secured Claim</u>:  A Claim to the extent such Claim is secured as defined in Bankruptcy

Code § 506.  An "Allowed Secured Claim" is thus both an Allowed Claim and Secured Claim as

defined herein.

HH.    <u>Secured Creditor</u>:  Any Creditor that is the holder of a Secured Claim, to the extent

such Claim is secured by collateral, and as provided for in Bankruptcy Code § 506(a).

II.     <u>Unsecured Claim</u>:  Any Claim other than an Administrative Expense Claim, a Priority

Tax Claim, a Priority Non-Tax Claim or a Secured Claim, and all Claims of Secured Creditors to the

extent such Claims are valued as unsecured pursuant to § 506(a) of the Bankruptcy Code.

JJ.     <u>Unsecured Creditor</u>:  Any Creditor holding an Unsecured Claim.

The words "herein" and "hereunder" and other words of similar import refer to this Plan as a

whole and not to any particular section, subsection, or clause contained in this Plan, unless the context

requires otherwise.  Whenever from the context it appears appropriate, each term stated in either the

singular or the plural includes the singular and the plural, and pronouns stated in the masculine, feminine,

or neuter gender include the masculine, feminine, and the neuter.  The section headings contained in the

Plan are for reference purposes only and shall not affect in any way the meaning, interpretation, and/or

construction of the Plan.

A term used in this Plan and not defined herein but that is defined in the Bankruptcy Code has

the meaning assigned to the term in the Bankruptcy Code.  A term used in this Plan and not defined

herein or in the Bankruptcy Code, but which is defined in the Bankruptcy Rules, has the meaning

assigned to the term in the Bankruptcy Rules.

## ARTICLE II.  <u>DESIGNATION AND TREATMENT OF UNCLASSIFIED CLAIMS</u>

A.     <u>Designation</u>.

Unclassified Claims consist of the following:

1.     <u>Administrative Expense Claims</u>:  Allowed Administrative Expense Claims as

defined above; and

2.      <u>Priority Tax Claims</u>:  Allowed Claims entitled to priority pursuant to Bankruptcy

Code § 507(a)(8).

B.      <u>Treatment</u>.

1.      <u>Administrative Expense Claims</u>.  Except to the extent that the holder has agreed

to a different and/or less favorable treatment of such Claim, each holder of an Allowed Administrative

Expense Claim shall be paid in Cash by the Reorganized Debtor the allowed amount of such Claim on

the later of the Effective Date or the entry of a Final Order of the Bankruptcy Court approving such

Claim; provided, however, that Administrative Expense Claims that represent expenses, debts, or

liabilities incurred by the Debtor in the ordinary course of business from and after the Petition Date shall

be assumed and paid by the Reorganized Debtor in accordance with the terms and conditions of any

agreements relating thereto in the ordinary course of the administration of the affairs of the Reorganized

Debtor.

2.      <u>Priority Tax Claims</u>.  Except to the extent that the holder of a particular Allowed

Priority Tax Claim has agreed to a different and/or less favorable treatment of its Claim, such holder will

receive on account of such Claim either:  (i) in the case of an Allowed Secured Priority Tax Claim,

payment in Cash by the Reorganized Debtor the allowed amount of such Secured Priority Tax Claim on

the later of the Effective Date or the date such Claim becomes an Allowed Claim; or (ii) the holder of

such a Claim will receive on account of such Claim regular installment payments in Cash, of a value, as

of the Effective Date of the Plan, equal to the Allowed amount of such Claim.  In the event the holder of

such a Claim will receive deferred Cash payments, such Claim holder shall receive equal monthly

installments of principal and interest beginning on the first day of the month following the Effective Date

and amortized over a period equal to but not exceeding five (5) years after the Petition Date, with such

equal monthly installments based on the Allowed amount of such Claim with interest thereon calculated

pursuant to Bankruptcy Code § 511.  The treatment proposed for Priority Tax Claims as outlined

above also applies to any claims that are secured by perfected tax liens.  Secured tax creditors shall

retain their liens until the claims are paid in full.

**ARTICLE III.        DESIGNATION AND TREATMENT OF IMPAIRED AND
                      UNIMPAIRED CLASSES**

  A. <u>Designation of Unimpaired and Impaired Classes</u>.

  Classes 1 and 6 are unimpaired under the Debtor's Plan. Classes 2, 3, 4, and 5 are impaired

under the Plan.

  B. <u>Classification and Treatment of Classes of Claims and Interests</u>.

  Below is a description of all Classes of Claims and interests, other than the Unclassified Claims,

and the treatment of all Classes of Claims under the Plan.

  C. <u>Specification and Treatment of Classified Claims</u>.

  The treatment of Claims described below applies only to Allowed Claims.  Claims that are

asserted but are subject to a pending dispute, objection, an adversary complaint, an estimation order of

the Bankruptcy Court, or a requirement of Bankruptcy Court review or approval (such as the request

for the payment of fees of Professional Persons), will be paid only after they become Allowed Claims

and then only in the amount allowed.  Distributions to holders of Claims that are not Allowed Claims as

of the Effective Date will be made in accordance with the Plan provisions for such Class of Claim if and

when the Claim becomes an Allowed Claim.

The Plan divides Claims of Creditors into Classes, certain of which are designated as "unimpaired" (meaning that Creditors will be unaffected by the Plan) and certain of which are "impaired" (meaning that Creditors' rights are changed by the Plan), and as those terms are more specifically described in Bankruptcy Code § 1124.  The Classes and their treatment are described below as follows:

1.      <u>Class 1 – Priority Non-Tax Claims</u>.

<u>Classification</u>:  Class 1 shall consist of all Priority Non-Tax Claims to the extent of the priority recognized pursuant to Bankruptcy Code § 507(a)(1), (4), (5), (6), (7), (9), and (10).  The Debtor believes there are no Class 1 Claims.  Class 1 is unimpaired.

<u>Treatment</u>:  In the event there are any Class 1 Claims, and except to the extent that a holder of a particular Class 1 Claim agrees to different and/or less favorable treatment of its Claim, and except to the extent that an agreement made in the ordinary course of the business between a particular Class 1 Claimant and the Debtor provides for different and/or less favorable treatment, the holder of an Allowed Class 1 Claim shall be paid in Cash on the Effective Date one hundred percent (100%) of the allowed amount of such Claim, without interest.  To the extent that the allowed amount of any Class 1 Claim exceeds the priority limitation of Bankruptcy Code §§ 507(a)(4), (5), (6), or (7), the holder of such Claim shall have an Allowed Class 5 Claim to the extent of the excess.

2.      <u>Class 2 –  Allowed Secured Claim of Bank of the West</u>.

<u>Classification</u>: Class 2 consists of the Allowed Secured Claim of Bank of the West ("BOTW"), successor in interest to Commercial Federal Bank, on account of the Debtor's Promissory Note to

BOTW dated on or about February 16, 2005, in the original principal sum of $10,980,609.40 (as amended and modified, hereinafter the "BOTW Promissory Note").

The BOTW Promissory Note is secured by five real estate mortgages.  The first real estate Mortgage is dated April 14, 2000, and filed for record on April 27, 2000, in the Office of the Scott County Recorder as Document No. 2000-11562 and later amended by modification filed March 18, 2005, as Document No. 2005-8169.  The mortgage grants BOTW a first mortgage lien on the Debtor's real property and a security interest in the personal property located thereon, as well as the rents generated therefrom.

The Promissory Note is further secured by the second real estate mortgage dated December 21, 2000, and recorded with the office of the Scott County Recorder on January 12, 2001, as Document No. 2001-1138.  This mortgage was further amended by modification dated October 31, 2003, and filed with the Scott County Recorder on November 7, 2003, as Document No. 2003-58506, modification dated February 16, 2005, and filed March 18, 2005, as Document No. 2005-8166, and modification dated February 16, 2005, and filed June 20, 2005, as Document No. 2005-19723.

The Promissory Note is further secured by the third real estate mortgage dated April 4, 2001, and recorded April 10, 2001, with Office of the Scott County Recorder as Document No. 2001-9905.  This mortgage was amended by modification dated March 18, 2005, as Document No. 2005-8164 and again amended by modification dated February 16, 2005, and recorded June 20, 2005, with the Office of the Scott County Recorder as Document No. 2005-19650.

The Promissory Note is further secured by a construction mortgage dated August 15, 2003, recorded in the Office of the Scott County Recorder on August 22, 2003, as Document No. 2003-45147.  This construction mortgage was amended by modification dated June 14, 2004, and filed with the Scott County Recorder on June 23, 2004, as Document No. 2004-22322 and again amended by modification dated February 16, 2005, and filed March 18, 2005, as document no. 2005-8165.

The Promissory Note is further secured by a real estate mortgage dated February 16, 2005, and recorded March 18, 2005, as Document No. 2005-8167.

The Assignment of Rents is dated February 16, 2005, and recorded with the Office of the Scott County Recorder on March 18, 2005, as Document No. 2005-8168.

The Promissory Note is further secured by those three certain Commercial Guaranty agreements ("Personal Guaranties") executed by John R. Pratt on May 23, 2002, Allan E. Meyer on May 22, 2002, and Daniel E. Ahrens on May 23, 2002, and executed in their respective individual capacities.  Messrs. Pratt, Meyer and Ahrens, and who are either current or former members of the corporate Debtor LLC, are designated as Insiders of the Debtor as that term is defined under Bankruptcy Code § 101(31).

The Promissory Note, Mortgages, Modifications, Assignment of Rents, and Guaranties may be collectively referred to herein as the "Loan Documents."

The Class 2 Claim Holder has filed a Proof of Claim, which has been assigned as Claim No. 10 on the Claims Register in the Bankruptcy Case, and asserts that a total of $12,044,733.79 (the "BOTW Debt") was due and owing by the Debtor to BOTW under the Promissory Note and Loan Documents as of the Petition Date.  The Debtor does not dispute BOTW's Proof of Claim.

The Debtor does not object to the Class 2 Claim and the Debtor believes the Class 2 Claim is fully secured.  The Class 2 Claim is impaired.

Treatment:  The holder of the Class 2 Claim shall be paid in full one hundred percent (100%) of all amounts allowed by the Court for such Claim, including any such amounts that may include attorney's fees subject to approval by the Court pursuant to Bankruptcy Code § 506. The Debtor shall pay the total allowed amount of the Class 2 Claim pursuant to the terms of the Promissory Note and Loan Documents, subject to the following modifications (hereinafter referred to as the "Modified Promissory Note"): (1) the term for payment on the Modified Promissory Note shall be extended to a maturity date that is fifteen (15) years subsequent to the Effective Date; (2) interest shall accrue on the outstanding principal balance owed under the Modified Promissory Note at the fixed rate of 4.25% per annum from the Effective Date until the Promissory Note is paid in full; (3) the Debtor shall make equal monthly payments on the outstanding principal and interest owed on the Modified Promissory Note based on a twenty-five (25) year amortization schedule, (4) all pre-petition payment or property tax-arrearages, and any post-petition payment or property tax arrearages shall be capitalized and added to the outstanding principal balance owed on the Modified Promissory Note as of the Effective Date; and (5) attorney's fees and costs, if approved by the Court pursuant to Bankruptcy Code § 506, shall be either capitalized and added to the outstanding principal balance owed on the Modified Promissory Note as of the Effective Date, or paid pursuant to a separate "Attorney's Fees and Costs" Note payable over five (5) years at five percent (5%) interest per annum, at the Debtor's discretion.

The Promissory Note, Loan Agreements, Mortgages, Assignment of Rents, and Personal Guaranties shall all be modified to provide that failure to pay, when due, any interest, principal, or property tax payment, or failure to maintain and provide evidence of insurance as required under the

Loan Documents, shall be defined as "Monetary Defaults," and any other events of default described in the Promissory Note, Loan Agreements, Mortgages, Assignment of Rents, and Personal Guaranties shall be deemed as "Non-Monetary defaults."

The Debtor/Reorganized Debtor and BOTW shall fully and expeditiously cooperate after Confirmation of this Plan to execute any and all documents necessary to incorporate the modifications to the Promissory Note and Loan Documents described herein, including, but not limited to, the Modified Promissory Note and payment schedule.

Other than as set forth above, all terms and conditions of the BOTW Promissory Note and Loan Documents shall remain unmodified and the Debtor and Reorganized Debtor shall comply with their terms and conditions.  The Class 2 Claim shall be treated in accordance with all of the terms and conditions of all Loan Documents respecting the Class 2 Claim, as modified, and the legal, equitable, and contractual rights to which the Class 2 Claim holder is entitled shall not be further altered, including BOTW retaining all priority lien and security interest positions in the same priority and status as it maintained prior to the Petition Date.  Furthermore, to the extent that the terms of the Stipulated Consent Orders between BOTW and the Debtor entered in this Bankruptcy Case concerning cash collateral do not conflict with the terms and provisions of this Plan, all of the terms and provisions of such Stipulated Consent Orders, including but not limited to the liens and security interest positions granted to and afforded BOTW therein, are hereby incorporated herein by this reference.

Upon the Confirmation Order becoming a Final Order, the Debtor's pre-petition default under the original Promissory Note and Loan Documents, and upon which summary judgment was entered against the Debtor in the "Order Granting Plaintiff's Motion for Summary Judgment and Judgment and

Decree of Foreclosure," entered on August 30, 2010, by Hon. Gary D. McKendrick, District Court

Judge, in the case entitled <u>Bank of the West v. Eagles Crest Leasing Group 1, LLC</u>, Case No.

EQCV113854, in the Iowa District Court in and for Scott County, shall be deemed cured, and the

basis for said Summary Judgment shall be voided and such obligations discharged.  To the extent

necessary, the Reorganized Debtor shall file a copy of this Plan and Confirmation Order with the Iowa

District Court in that state court action, so as to advise the Iowa District Court that said state court

action is and should be promptly dismissed as against all named defendants therein.

On or before the effective date of the Plan, the Reorganized Debtor shall execute an

"Agreement for Alternative Non-Judicial Foreclosure," pursuant to Iowa Code § 654.18 (the

"Agreement"), and deliver a duly executed general warranty deed (the "Deed") transferring title of the

real estate collateral to Bank of the West.  The Agreement and Deed shall be in a form satisfactory to

Bank of the West and held in escrow at Bank of the West, and not recorded, unless and until there is an

uncured default under this Plan.

3.    <u>Class 3 – Allowed Convenience Class Claims</u>.

<u>Classification</u>: Class 3 is an Administrative Convenience Class pursuant to Bankruptcy Code §

1122(b).  Class 3 consists of each Unsecured Claim against the Debtor that is not otherwise entitled to

priority, that is not otherwise classified above, and that meets *either* of the following two requirements:

(i) the holder of such Claim asserts Unsecured Claims in the aggregate against the Debtor of $1,000.00

or less; or (ii) the holder of such Claim irrevocably elects to limit the total of all Unsecured Claims held

by such holder against the Debtor to no more than $1,000.00.  The Debtor believes that as of the

Petition Date there are approximately fifteen (15) Class 3 Claims totaling approximately $5,123.53

(without regard to any Class 4 Claim holders that may elect Class 3 treatment). Class 3 is impaired.

<u>Treatment</u>: Except to the extent that a holder of a particular Class 3 Claim agrees to a different, less favorable treatment of its Claim, each holder of an Allowed Class 3 Claim shall receive, in exchange for and in full satisfaction of such Claim, a Cash payment equal to one hundred percent (100%) of the allowed amount of such Claim, without interest, on or before the Effective Date. The Plan requires that any Creditor asserting Unsecured Claims totaling more than $1,000.00 that wishes to elect Class 3 treatment of its Unsecured Claim must make such election on the ballot accompanying this Plan.

4.      <u>Class 4 – Allowed General Unsecured Creditors</u>.

<u>Classification</u>: Class 4 consists of all Allowed General Unsecured Claims that are: (i) against the Debtor and not otherwise entitled to priority; (ii) are not held by an insider of the Debtor, as that term is defined in the Bankruptcy Code, and (iii) not otherwise classified above. Class 5 also includes Unsecured Claims resulting from rejection of unexpired leases and executory contracts and deficiency claims of secured creditors, if any. Class 4 Claims are impaired.

<u>Treatment</u>: Each holder of a Class 4 Claim shall receive, in exchange for and in full satisfaction of such Claim, two (2) dividend payments, the first such payment to be paid within one year of the Effective Date, and the second payment to be paid within eighteen (18) months after the Effective Date. Although the Reorganized Debtor will endeavor to have each of the two (2) payments be equal to fifty percent (50%) of each Allowed Class 4 Claim, if the first of the two (2) payments does not equal fifty percent (50%), the percentage difference balance shall be paid in the second and final payment. Each Allowed Class 4 Claim will be entitled to interest at the rate of three percent (3%) per annum from the

Effective Date through the date of payment, with such interest payment being made in the second of the two payments.  No additional payments shall be made to the Class 4 Claim holders.

Pursuant to Bankruptcy Code § 1111(a), a Proof of Claim is deemed filed under Bankruptcy Code § 501 for any Claim that appears in the Debtor's schedules, except for Claims that the Debtor specifically scheduled as disputed, contingent, and/or unliquidated.  In the case where the Debtor duly scheduled Claims as either disputed, contingent, and/or unliquidated, and no Proof of Claim was timely filed by such Claim Holder, such scheduled debt shall not be deemed a Claim, and shall not participate in this Plan or receive any dividend on account of such scheduled debt under Class 4 treatment.

To the extent that a Class 4 Claim is for damages resulting from the rejection of an unexpired lease and/or executory contract, or the deficiency claim of a Secured Creditor, and such Class 4 Claim holder has a guaranty, surety, or right to pursue an insider of the Debtor for damages, such a Class 4 Claim holder shall be stayed, and shall not be entitled to pursue any insider of the Debtor, or the property of an insider of the Debtor, on any guaranty or surety during and while the Debtor/Reorganized Debtor, as obligor, makes its regular payments under the Plan, and is not otherwise in default under the Plan or its payments to the Class 4 Claim Holders.

Nothing shall prevent the Reorganized Debtor, and the Reorganized Debtor shall be entitled and authorized, to immediately pre-pay all the Class 4 Claim holders at the Reorganized Debtor's discretion, and any such pre-payment shall be in full and complete satisfaction of its obligations under the Plan, and be a discharge of its obligations to pay any further dividend to Allowed Class 4 Claim holders.

5.      <u>Class 5 – Subordinated Unsecured Claims of Insiders</u>.

<u>Classification</u>:  Class 5 consists of all Allowed Subordinated Unsecured Claims held by an

Insider of the Debtor against the Debtor.  The Debtor believes there exists less than or equal to one (1)

Claim, that of Dovetail Builders, against the Debtor.  There has been no Proof of Claim filed on behalf

of Dovetail Builders or any other Insiders in this Bankruptcy Case.  The Debtor is informed and verily

believes there are no other Persons who can be deemed Insiders that have a Claim or Claims against

the Debtor.  The Class 5 Claims are impaired.

<u>Treatment</u>:  The holder of a Class 5 Claim shall not receive payments under the Plan.

Subordination of Insider Claims is not required under the Bankruptcy Code; however, the Plan's

subordination of such Claims reflects the Debtor's belief that the Claims of other Creditors of the

Debtor generally should be paid before the Debtor pays Insiders.

6.      <u>Class 6 – Equity Interests</u>.

<u>Classification</u>:  Class 6 consists of the equity interests in the corporate Debtor represented by all

of the issued and outstanding membership interests in Eagles Crest Leasing Group 1, LLC as of the

Petition Date.  The membership interests of the Debtor are owned by John R. Pratt, Alan Meyer, and

Dan Aherns, respectively.

<u>Treatment</u>:  The Class 6 interest holders shall retain their equity interests in the Debtor.  The

Class 6 interest holders shall be entitled to retain their respective interest in the Debtor, as the Class 4

Claim holders shall receive 100% of the Allowed amount of their respective Claims.  Class 6 is

unimpaired.

7.      Miscellaneous Provisions.

        a.      Interest.

Interest shall be calculated on the basis of a 365-day year, irrespective of what any Creditor's

agreement with the Debtor may provide.  Further, notwithstanding any contrary provision in the Plan,

applicable Security Documents, or other agreement, interest due to any Creditor shall not exceed the

maximum amount allowed by applicable non-bankruptcy law in any period, except that Bankruptcy

Code §§ 511(a) and (b) shall govern all situations concerning the payment of interest on a tax claim or

an administrative expense tax, or the payment of interest to enable a creditor to receive the present

value of the allowed amount of a tax claim.

        b.      Reservation of Rights on Classification Disputes.

In the event any Creditor challenges its classification under the Plan, the Debtor reserves the

right to seek Bankruptcy Court determination of the appropriate classification.  Such determination shall

not be a condition precedent to confirmation of the Plan and may be effected through the claims

objection process.  Should the Creditor prevail in its classification challenge, such Creditor shall be

treated under the Plan as if such Creditor were classified as so determined. In addition, the classification

of claims in specific Classes is not an admission of the ultimate validity, enforceability, perfection, or

liability for such Claims, and the Debtor expressly reserves all rights with respect to any objections to or

other litigation on such Claims.

# ARTICLE IV. MEANS FOR IMPLEMENTATION OF THE PLAN

A.  Reduction of Secured Debt Obligations.

Pursuant to the treatment to be accorded on account of the Class 2 Claim, the Debtor and Reorganized Debtor's largest financial obligation, that of its senior secured debt holder, the monthly debt service obligations of the Debtor and Reorganized Debtor shall be significantly and dramatically reduced.  The fixing and reduction of the interest rate to be paid by the Debtor and Reorganized Debtor, and calculating principal and interest payments on a 30-year amortization, are the keystones to this change.  Those changes alone will allow the Debtor and Reorganized Debtor to "cash flow" their business operations, based on the projections of future income and expenses prepared by the Debtor's staff.

B.  Change in Property Management.

In addition to the modification of its existing financing arrangement with BOTW hereunder, the Reorganized Debtor shall make the necessary changes to its business operations to result in greater efficiencies and increased profits.  The Debtor and Reorganized Debtor shall retain its corporate form and continue to operate its apartment properties as residential units for lease.  After thorough analysis, the Debtor has determined that the causes of the Debtor's pre-petition financial distress, which resulted in BOTW initiating foreclosure proceedings, and culminating in this Bankruptcy Case, was the direct result of the gross mismanagement of the Debtor's real estate operations by Dial Properties, its prior outside third-party property managers.  The Reorganized Debtor shall forego outside third-party property management entirely and conduct all property management of its residential apartment properties in-house in order to be more cost-effective and efficient.

Among some of the changes that have been or shall be implemented or otherwise reinstated are:

1.      Changes to its procedures for background and credit checks of prospective tenants;

2.      Changing rental standards to reduce the risk of renting to undesirable tenants that cause damage, fail to pay their rent on time, and not skip out owing money after vacating their tenancy;

3.      Diligent record keeping and accounting procedures to increase income and reduce expenses, including implementation of new software;

4.      More maintenance and repairs handled in-house, as opposed to hiring contractors;

5.      Better control and use of security and pet damage deposits, resulting in more of the security deposit used after tenants leave, rather than paying for same out of general funds;

6.      New, better and more diligent collections of amounts owed by tenants who terminate their leases early without paying the full amount they contracted to pay and;

7.      Aggressive collection of current bad debt that prior management failed to pursue.

C.      Compliance with Projections.

The Reorganized Debtor shall operate its business in material compliance with: (i) the cash expenditures set forth in the projections attached to this Plan and/or (ii) updates to such projections, which updates shall be implemented as described below.  The Reorganized Debtor shall be deemed to be in material compliance with the projections or the updates thereto so long as it neither makes nor

suffers a change in its business as presented in the projections (or in the updates thereto) so as to

materially increase the risk of non-payment to unsecured creditors hereunder.

        D.      <u>Use of Excess Cash</u>.

        Subject to the foregoing provisions of this Article, and except as otherwise provided by this

Plan, any excess Cash in the possession of the Reorganized Debtor will be held in accordance with the

Plan and may be used by the Reorganized Debtor in the ordinary course of its business or, in the

Reorganized Debtor's discretion, may be used to pre-pay future installments to Creditors of the

Reorganized Debtor.

        E.      <u>Prepayments</u>.

        Any prepayment(s) made under this Plan to any Creditor(s) shall satisfy the obligation(s) to

make such payment(s) on the date(s) such payment(s) would otherwise be due, shall constitute full

performance hereunder to the extent of any such prepayment(s), and may be made without penalty

unless otherwise stated herein.

        F.      <u>Retention of Liens</u>.

        Subject to the express provisions of this Plan and the Stipulated Consent Orders concerning

cash collateral entered in this Bankruptcy Case and incorporated herein by this reference, and subject to

any avoidance actions that the Debtor or the Reorganized Debtor may bring, holders of Allowed

Secured Claims shall retain any valid, perfected liens against the Debtor's and Reorganized Debtor's

assets.

G.    Post-Confirmation Compensation of Professional Persons.

Compensation for services rendered and for reimbursement of expenses by a Professional

Person after the Confirmation Date need not be approved by the Bankruptcy Court.  Professional

Persons may invoice the Reorganized Debtor directly, and the Reorganized Debtor may pay such

invoices without further Order of the Bankruptcy Court; provided, however, that in the event of a

dispute between the Reorganized Debtor and the Professional Person regarding such compensation or

reimbursement, the Professional Person may submit an application to the Bankruptcy Court for review

of the request for compensation and reimbursement, and the Bankruptcy Court retains jurisdiction to

hear and approve such application and compel payment thereon.  Such post-confirmation compensation

for services rendered and reimbursement of expenses shall be considered an ordinary operating

expense, and the Reorganized Debtor shall be liable for such expense.

H.    All Section 1129(a)(4) Payments Subject to Bankruptcy Court Review.

As required by Bankruptcy Code § 1129(a)(4), all payments made or to be made by the

Debtor or the Reorganized Debtor for services or for costs and expenses in connection with the

Bankruptcy Case, or in connection with the Plan and incident to the Bankruptcy Case, including both

pre-petition and post-petition attorney's fees and costs which the Class 2 Claim holder may seek to tax

the Debtor and/or Reorganized Debtor for in connection with its allowance of its Class 2 Claim, or for

any post-petition attorney fees and costs, are subject to approval of the Bankruptcy Court as

reasonable.  To the extent that any such payment is not subject to the procedures and provisions of

Bankruptcy Code §§ 326-331, pursuant to this Plan, or otherwise, then such Bankruptcy Court

approval shall be deemed to have been given through entry of the Confirmation Order unless, within

thirty (30) days of such payment or request for such payment, the Bankruptcy Court, the United States

Trustee, the party making the payment, or the party receiving the payment challenges or seeks approval

of the reasonableness of such payment; no other parties or entities shall have standing to make such a

challenge or application for approval. Nothing in this provision shall affect the duties, obligations, and

responsibilities of any entity under Bankruptcy Code §§ 326-331.

I.      Default.

1.      Events of Default.

The following shall be "Events of Default" under this Plan:

a.      The failure of the Reorganized Debtor to make any plan payment or

payment of interest, principal, or property taxes required under the Plan when due, or the failure to

maintain and provide evidence of insurance as required under the Loan Documents, and the receipt of

written Notice of Monetary Default (defined below) from a Claim holder regarding such missed

payment; provided, however, that, except as otherwise provided in this Plan, no Monetary Default shall

be deemed to have occurred if such missed payment is made within thirty (30) days of service of a

Claim holder's written of failure to make such a payment.  In the case of a Non-Monetary Default, the

Debtor or Reorganized Debtor shall have two (2) years from receipt of written Notice of Non-

Monetary Default to cure such a Non-Monetary Default.

b.      Provided no agreement exists to extend or modify the terms of any

agreement between the Reorganized Debtor and its Creditors, failure of the Reorganized Debtor to pay

when due all debts and expenses in the ordinary course of its financial affairs.

c.      Failure to comply with any provision of this Plan.

24

2.      Cure of Prior Defaults.

As of the date of the Confirmation Order becoming a Final Order, any and all defaults, either

pre-petition or post-petition, by the Debtor under any bankruptcy or non-bankruptcy agreement or

judgment shall be deemed cured, and notice of default or sale recorded by any Creditor prior to the

Effective Date shall be deemed null, void, and to have no further force or effect.

3.      Consequences of Default.

Notwithstanding any contrary provision in the Plan, the Disclosure Statement, any pleading,

order or other document filed in this case, or any other document, contract, or agreement, should the

Debtor or the Reorganized Debtor fail in any material respect to timely perform its duties and

commitments under the Plan, including, but not limited to, making the payments to holders of Claims

called for in the Plan, any party in interest adversely affected by such failure may give the Debtor notice,

in writing, of such failure to perform (a "Notice of Default").  If a Monetary Default is not cured within

thirty (30) days, or a Non-Monetary Default is not cured within two (2) years after service of the

Notice of Default, the adversely affected party may file a motion with the Court to determine what relief

may be appropriate because of such default, including but not limited to the entry of an order to timely

perform under the Plan, dismissal of the case, or conversion of the case to one under Chapter 7;

provided, however, that if a final decree closing this Bankruptcy Case has been entered by the Court,

the adversely affected party may seek relief in state court.  In the alternative, if allowed by the applicable

provisions of the Bankruptcy Code and state law, if such a Monetary Default is not cured within thirty

(30) days, an adversely affected taxing authority may declare the entire amount of its Allowed Claim(s)

immediately due and payable and thereafter proceed to enforce collection using any and all of its state

law remedies for the collection of unpaid taxes. In addition to and not in lieu of the foregoing, after an

Event of Default, an adversely affected party may seek remedies in any appropriate court of competent

jurisdiction to deal with such an Event of Default.

Notwithstanding the foregoing, the Reorganized Debtor or another party in interest may seek an

order of the Bankruptcy Court staying any Creditor from pursuing its Default rights and remedies based

on appropriate grounds.  Except as otherwise specified in this Plan, such grounds may include, among

others: (1) that no uncured Event of Default has occurred; and (2) that the Creditor is adequately

protected and the Reorganized Debtor is likely to be able to cure any Event of Default within a

reasonable period of time taking into account the Reorganized Debtor's right to seek modification of this

Plan in accordance with applicable bankruptcy law.  The Debtor shall bear the burden of proof with

respect thereto.

Notices pursuant to this Article shall be served as follows:

Counsel for the Reorganized Debtor:

Jeffrey D. Goetz, Esq.
Bradshaw, Fowler, Proctor & Fairgrave, P.C.
801 Grand Avenue, Suite 3700
Des Moines, IA 50309-8004

Reorganized Debtor:

Eagles Crest Leasing Group 1, LLC
Attention: John R. Pratt, Manager
P.O. Box 5247
Coralville, IA 52241

J.       The Assumption or Rejection of Unexpired Leases and Executory Contracts.

    1.       Assumption and Rejection.

The executory contracts and unexpired leases with Schindler Elevator Corporation and all

tenants with residential apartment leases to which the Debtor may be a party are expressly assumed

under this Plan.  The entry of the Confirmation Order shall constitute Bankruptcy Court approval of the

assumption of the executory contracts and unexpired leases to be assumed pursuant to the foregoing

provisions.

The executory contracts and unexpired leases with Dial Properties and Otis Elevator Company

are expressly rejected under this Plan.  The entry of the Confirmation Order shall constitute Bankruptcy

Court approval of the rejection of the executory contracts and unexpired leases to be rejected pursuant

to the foregoing provisions.

    2.       Reservation of Rights.

The Debtor and Reorganized Debtor reserve the right to file applications or motions for the

assumption or rejection of any executory contract or unexpired lease at any time prior to the

Confirmation Date, and to prosecute any such application to entry of a Final Order at any time

thereafter.

K.       Proof of Claim.

Each entity that is a party to an executory contract or unexpired lease rejected pursuant to the

Plan, or any Secured Creditor who asserts a Claim for an unsecured deficiency after surrender and

liquidation or other disposition of the collateral securing said Claim, and only such entity, shall be entitled

to file, not later than thirty (30) days after the Confirmation Date, a Proof of Claim for damages alleged

to arise from the rejection or termination of the executory contract or unexpired lease, or for the

unsecured deficiency that may arise from liquidation of collateral, to which such entity is a party.

1. <u>Objections to Claims and Proofs of Claim</u>.

The deadline for any party in interest to file objections to any and all Claims and/or Proofs of

Claim filed in this Bankruptcy Case other than claims arising from the rejection of executory contracts

and unexpired leases or unsecured deficiency claims shall be the Claims Objection Bar Date of August

31, 2011. The deadline for the Debtor and/or the Reorganized Debtor to file objections to any and all

Claims or Proofs of Claim arising from the termination of an executory contract, rejection of an

unexpired lease, or an unsecured deficiency claim that arises after liquidation or other disposition of

surrendered collateral on a secured claim, shall be sixty (60) days after the Confirmation Date, unless

extended by order the Bankruptcy Court.  Objections may include a request for subordination pursuant

to Bankruptcy Code § 510.  Filing, service, and prosecution of objections shall be subject to and in

accordance with the Federal Rules of Bankruptcy Procedure and local rules and procedures.

2. <u>Resolution of Disputes</u>.

Disputes regarding the validity or amount of Claims and/or Proofs of Claim shall be resolved

pursuant to the procedures established by the Bankruptcy Court, the Plan, the Bankruptcy Code, the

Federal Rules of Bankruptcy Procedure, and other applicable law, and such resolution shall not be a

condition precedent to confirmation or consummation of the Plan.

3. <u>Settlement</u>.

The Debtor or the Reorganized Debtor may compromise, liquidate, or otherwise settle any

undetermined or objected to Claim, Proof of Claim, or Cause of Action pursuant to Federal Rule of

Bankruptcy Procedure 9019.

       4.    Allowed Amount.

No holder of a Claim shall receive a distribution in excess of the amount Allowed, either by the

Bankruptcy Court or as provided herein, with respect to any such Allowed Claim.

       L.    Unclaimed Funds.

Any distribution by check to any holder of an Allowed Claim, if unclaimed or uncashed by the

payee thereof within ninety (90) days after issuance and delivery by first class mail, shall become

property of the Debtor or the Reorganized Debtor who issued such check, and all liabilities and

obligations of the Debtor and of the Reorganized Debtor to such payee and any holder of such check

shall thereupon cease.

       M.    Litigation.

The Debtor and the Reorganized Debtor shall retain all Claims or Causes of Action that they

have or hold against any party, whether arising pre- or post-petition, subject to applicable state law

statutes of limitation and related decisional law, whether sounding in tort, contract, or other theory or

doctrine of law or equity, and all such Claims and Causes of Action shall vest in the Reorganized Debtor

on the Effective Date.  Confirmation of the Plan affects no settlement, compromise, waiver, or release of

any Cause of Action unless the Plan or Confirmation Order specifically and unambiguously so provides.

 The non-disclosure or non-discussion of any particular Cause of Action is not and shall not be

construed as a settlement, compromise, waiver, or release of such Cause of Action.

N.     <u>Modification/Amendment of Plan</u>.

1.     <u>Amendments Prior to Confirmation</u>.

The Debtor may propose any number of amendments to or modifications of the Plan, or may rescind and withdraw the Plan in its entirety (with or without substitution of a replacement Plan), at any time prior to Confirmation.  If the Debtor revokes or withdraws the Plan, or if Confirmation or the Effective Date does not occur, then the Plan shall be deemed null and void, and in any such event, nothing contained herein shall be deemed to constitute an omission or a waiver or release of any Claims or interests by or against the Debtor or any other person, or to prejudice in any manner the rights of the Debtor or any other person in any further proceedings involving the Debtor.

2.     <u>Amendments After Confirmation</u>.

The Plan may be modified by the Debtor or the Reorganized Debtor at any time after the Confirmation Date, provided that such modification meets the requirements of the Bankruptcy Code. The Debtor or the Reorganized Debtor may, with the approval of the Bankruptcy Court, and so long as it does not materially or adversely affect the interests of Creditors, remedy any defect or omission, or reconcile any inconsistencies in the Plan, or in the Confirmation Order, in such manner as may be necessary to carry out the purposes and intent of the Plan.  Any proposed material or non-material post-Confirmation modifications shall be served on any and all other Creditors and interested parties who may request such notice in writing, such that they are given a reasonable opportunity to oppose such modifications.

3.      Effect on Claims.

A Creditor that has previously accepted or rejected this Plan shall be deemed to have accepted

or rejected, as the case may be, this Plan, as modified, unless, within the time fixed by the Bankruptcy

Court, such Creditor elects in writing to change its previous acceptance or rejection.

O.      Reservation of Section 1129(b) Rights (Cramdown).

If any Class of Creditors holding Claims against the Debtor rejects the Plan, the Debtor,

pursuant to Bankruptcy Code § 1129(b), will seek Confirmation if all of the applicable requirements of

Bankruptcy Code § 1129(a), other than those of § 1129(a)(8), have been met.

P.      Post-Confirmation Status Reports and Final Decree.

The Reorganized Debtor or its attorney of record shall file status reports with the Bankruptcy

Court on no less than a quarterly basis after entry of the Confirmation Order, describing the progress

towards consummation of the Plan.  The status reports shall be served on the United States Trustee.

The status reports shall include a disclosure of the Reorganized Debtor's cash position and the extent of

any prepayments of the Reorganized Debtor's obligations during the reported quarter in substantially the

same format as provided for in monthly operating reports prior to confirmation of the Plan or such other

form or format acceptable to the Office of the United States Trustee.

In compliance with and pursuant to the Bankruptcy Code, the Bankruptcy Rules, legislative

history, and decisional law, at the earliest opportunity when the Plan has been substantially

consummated in most material respects, the Reorganized Debtor or its attorney shall file a final report

and application for a final decree closing the Bankruptcy Case.

Q.    Post-Confirmation United States Trustee Fees.

The Reorganized Debtor shall pay post-confirmation fees pursuant to 28 U.S.C. § 1930 to the

extent required by law.  The amount of fees due shall be calculated and paid based on all

disbursements, whether made pursuant to this Plan or in the ordinary course of the Debtor's and/or the

Reorganized Debtor's business.  All disbursements shall be counted for purposes of the calculation.  All

pre-confirmation and post-confirmation fees due and owing on or before the Effective Date shall be

paid on or before the Effective Date.

R.    Other Terms and Creditor Protections.

The Debtor and the Reorganized Debtor, upon the Effective Date:

1.    Will be enjoined from filing a future bankruptcy proceeding in another district;

2.    Will pay its undisputed, regular, and ordinary debts as they come due;

3.    Will not engage in any transactions with Insiders that are not at arm's length and

commercially reasonable, except as authorized by this Plan, the Confirmation Order, or further order of

the Bankruptcy Court;

4.    Will maintain all existing insurance coverage except to the extent such coverage

becomes no longer necessary; and

5.    Will conduct its financial affairs with good business judgment.

S.    Effect of Confirmation.

Upon Confirmation of the Plan, the Debtor shall receive the broadest discharge possible under

Bankruptcy Code § 1141(d)(1), limited as applicable by the provisions of Bankruptcy Code §

1141(d)(6).  More particularly, Confirmation of the Plan shall discharge the Debtor from any Claim or

debt that arose before the Confirmation Date and any debt of a kind specified in Bankruptcy Code §

502(g), (h) or (i), whether or not (i) a Proof of Claim based on such debt is filed or deemed filed under

Bankruptcy Code § 501, (ii) such Claim is allowed under Bankruptcy Code § 502, or (iii) the holder of

such Claim has accepted the Plan.

Pursuant to Bankruptcy Code § 524, the discharge (i) voids any judgment at any time obtained

to the extent that such judgment is a determination of the personal or corporate liability of the Debtor

with respect to any debt discharged under Bankruptcy Code § 1141, whether or not discharge of such

debt is waived, and (ii) operates as an injunction against the commencement or continuation of an

action, employment of process, or an act to collect, recover, or offset any such debt as a personal

liability of the Debtor, whether or not discharge of such debt is waived.

Furthermore, any Creditor or holder of a Claim against the Reorganized Debtor, or any Person

who has held or asserted, hold or asserts, or may in the future hold or assert a Claim, shall be

permanently stayed, enjoined, and restrained from taking any action, directly or indirectly, for the

purposes of asserting, enforcing, or attempting to assert or enforce any such Claim, including (a)

commencing or continuing in any manner, any action, or any other proceeding of any kind with respect

to any such Claim against the person or property of the Reorganized Debtor; (b) seeking the

enforcement, attachment, collection, or recovery by any manner or means of any judgment, award,

decree, or order against the person or property of the Reorganized Debtor with respect to any such

Claim; (c) creating, perfecting, or enforcing any encumbrance or lien of any kind against the person or

property of the Reorganized Debtor with respect to any such Claim; (d) asserting any setoff, right of

subrogation, or recoupment of any kind against any obligation due to the Reorganized Debtor with

respect to any such Claim; and (e) taking any act, in any manner and in any place whatsoever, that does

not conform to or comply with the provisions of the Plan.  In the event any Person takes any action that

is prohibited by, or is otherwise inconsistent with the provisions of this Section, the Plan and

Confirmation Order, then, upon notice to the Court by an affected Party, the action or proceeding in

which any such Claim of such Person is asserted will be automatically transferred to the Bankruptcy

Court or the U.S. District Court for enforcement of the provisions as noted above and herein.

Notwithstanding the foregoing, confirmation of the Plan will not discharge the Reorganized

Debtor from any debt (A) of a kind specified in paragraph (2)(A) or (2)(B) of § 523(a) of the

Bankruptcy Code that is owed to a domestic governmental unit; or (B) for a tax or customs duty with

respect to which the Reorganized Debtor (i) made a fraudulent return, or (ii) willfully attempted in any

manner to evade or to defeat such tax or such customs duty.

T.    <u>Binding Effect</u>.

The provisions of the Plan, the Confirmation Order, and any associated findings of fact or

conclusions of law shall bind the Debtor, any entity acquiring property under the Plan, and any Creditor

of the Debtor, whether or not the Claim of such Creditor is impaired under the Plan and whether or not

such Creditor has accepted the Plan.

U.    <u>Vesting of Property</u>.

Confirmation of the Plan vests all of the property of the Debtor's Chapter 11 estate, including

Causes of Action, in the Reorganized Debtor, subject only to such liens, encumbrances, and security

interests as are provided for in this Plan. As of the Confirmation Date, the assets of the Debtor and of

the Reorganized Debtor dealt with under the Plan shall be free and clear from any and all Claims or the

holders of Claims, except as specifically provided otherwise in the Plan or the Confirmation Order.  On

the Confirmation Date, the Debtor and the Reorganized Debtor shall be entitled to control its financial

affairs without further order of the Bankruptcy Court and to use, acquire, and distribute any of its

property free of any restrictions of the Bankruptcy Code or the Bankruptcy Court, except as

specifically provided otherwise in the Plan or Confirmation Order.  The terms of the Plan shall

supersede the terms of all prior orders entered by the Bankruptcy Court in the Bankruptcy Case and

the terms of all prior stipulations and other agreements entered into by the Debtor with other parties in

interest, except as specifically recognized in the Plan or the Confirmation Order.

V.      Avoidance Actions

The Debtor has conducted and will continue to conduct a reasonable and diligent investigation

and determine whether or not avoidance actions exist pursuant to the Bankruptcy Code.  At this time

the Debtor does not anticipate that any such avoidance actions exist or will need to be pursued.

W.      Bar Date For Administrative Expense Claims.

Except as set forth in Bankruptcy Code § 503(b)(1)(D), all Administrative Expense Claim

holders shall file motions for allowance of their Administrative Expense Claims not later than thirty (30)

days after the Effective Date of the Plan or such Administrative Expense Claims shall be disallowed and

forever barred.  Notwithstanding the foregoing, any governmental taxing authority that relies on the filing

of tax returns in order to determine the amount and existence of such Administrative Expense Claims

shall file all motions for allowance of its Administrative Expense Claims not later than six (6) months

after the Debtor files the appropriate and applicable tax returns necessary for such taxing authority to

determine the amount and existence of its claim.

Any Creditor or party in interest having any Claim or cause of action against the Debtor or against any of the Debtor's professionals relating to any actions or inactions in regard to the Bankruptcy Case must pursue such Claim or Cause of Action by the commencement of an adversary proceeding within thirty (30) days after the Effective Date of the Plan or such Claim or Cause of Action shall be forever barred and released.  Nothing in this Section shall be construed to affect the Bar Date for filing Pre-Petition Claims against the Debtor.

The Office of the United States Trustee shall not be obligated to file any Proof of Claim for either pre-confirmation or post-confirmation fees owed by the Debtor for and on account of the U.S. Trustee Quarterly Fees.

 X. <u>Post-Confirmation Jurisdiction</u>.

 1. <u>Purposes</u>.

The Bankruptcy Court shall retain jurisdiction over the Bankruptcy Case subsequent to the Confirmation Date to the fullest extent permitted under § 1334 of Title 28 of the United States Code, including, without limitation, for the following purposes:

 a. To determine any requests for subordination pursuant to the Plan and Bankruptcy Code § 510, whether as part of an objection to Claim or otherwise;

 b. To determine any motion for the sale of the Debtor's or the Reorganized Debtor's property, or to compel re-conveyance of a lien against or interest in such property upon payment, in full, of a Claim secured under the Plan;

 c. To determine any and all proceedings related to allowance of Claims or objections to the allowance of Claims, including objections to the classification of any Claim and

determination of any deficiency Claim following any Event of Default under this Plan, and including, on

an appropriate motion pursuant to Federal Rule of Bankruptcy Procedure 3008, reconsidering Claims

that have been allowed or disallowed prior to the Confirmation Date;

d.    To determine any and all applications of Professional Persons and any other

fees and expenses authorized to be paid or reimbursed in accordance with the Bankruptcy Code or the

Plan;

e.    To determine or to exercise any rights pursuant to Bankruptcy Code §§ 506,

544-551, and 553;

f.    To modify the Plan or the Disclosure Statement, or to remedy any defect or

omission or reconcile any inconsistency in any order of the Bankruptcy Court (including the

Confirmation Order), the Plan, or the Disclosure Statement, in such manner as may be necessary to

carry out the purposes and effects of the Plan;

g.    To determine disputes regarding title of property of the estate claimed to be

property of the estate or of the Debtor, whether as Debtor or Debtor In Possession, but not as to title

to real property acquired after the Effective Date;

h.    To ensure that the distributions to holders of Claims are accomplished in

accordance with the provisions of the Plan;

i.    To hear any other matter not inconsistent with Chapter 11 of the Bankruptcy

Code;

j.    To enter a final decree closing the Bankruptcy Case;

k.      To enter and implement such orders as may be appropriate in the event the

Confirmation Order is for any reason stayed, reversed, revoked, or vacated; and

l.      To determine such other matters as may arise in connection with the Plan, the

Disclosure Statement, or the Confirmation Order.

2.      Abstention.

If the Bankruptcy Court abstains from exercising or declines to exercise jurisdiction, or is

otherwise without jurisdiction, over any matter arising out of the Bankruptcy Case, this post-

confirmation jurisdiction section shall have no effect upon and shall not control, prohibit, or limit the

exercise of jurisdiction by any other court having competent jurisdiction with respect to such matter.

Y.      Disclosure of Identity of Officers and Directors of Reorganized Debtor.

In compliance with Bankruptcy Code § 1129(a)(5), the Debtor, as the Plan Proponent, duly

discloses that after the Effective Date, the members and managers of the Reorganized Debtor will

remain the same as before the Effective Date, which is the same as on the Petition Date.  The equity

interests of the members shall also remain the same as before the Effective Date, which are the same as

on the Petition Date.

Concerning ongoing management of the Reorganized Debtor, John Pratt and Alan Meyer are

the sole members and managers of the Debtor, and will continue to be the sole members of the

Reorganized Debtor.  John Pratt holds 49.99%, Alan Meyer holds 49.99%, and Dan Ahrens holds

.02% of the outstanding and issued interests in the Debtor, and their relative ownership interests in the

Reorganized Debtor will be the same.  John Pratt will continue to play an active role as Manager of the

Reorganized Debtor's day-to-day operations, and Alan Meyer and Dan Ahrens will continue to play a

minority role in the decisions of the corporate Reorganized Debtor, and not be active Managers of the day-to-day operations.

      Z.      <u>Retirement Benefits</u>.

The Debtor does not provide retiree benefits to its employees.  Pursuant to Bankruptcy Code § 1129(a)(13), after the Effective Date, and pursuant to this Plan, to the extent  the Reorganized Debtor is otherwise obligated, it shall provide for the continuation of retiree benefits, as that term is defined under Bankruptcy Code § 1114, at the level established per Bankruptcy Code § 1114, and for the period of time that the Debtor and the Reorganized Debtor may be obligated  to provide such benefits.

      AA.      <u>General Provisions</u>.

      1.      <u>Headings</u>.

The article and section headings used in the Plan, except for definitions contained in Article I, are for convenience and reference only, and they do not constitute a part of the Plan or in any manner affect the terms, provisions, or interpretations of the Plan.

      2.      <u>Severability</u>.

Should any term or provision in the Plan be determined to be unenforceable, such determination shall in no way limit or affect the enforceability and operative effect of any other term or provision of the Plan; <u>provided</u>, <u>however</u>, that this provision shall not be applied or interpreted so as to defeat the primary purpose of this Plan, which is to restructure the Debtor's obligations to its Creditors according to the treatment afforded to its Claims under the Plan.

3.      <u>Governing Law</u>.

Except to the extent that the Bankruptcy Code or other provisions of federal law are applicable,

the rights and obligations arising under the Plan in any documents, agreements, and instruments executed

in connection with the Plan (except to the extent such documents, agreements and instruments designate

otherwise) shall be governed by, and construed and enforced, in accordance with the laws of the State

of Iowa.

4.      <u>Successors and Assigns</u>.

The rights and obligations of any entity named or referred to in the Plan shall be binding upon,

and shall inure to the benefit of, the successors and assigns of such entity.

5.      <u>Plan is Self Executing</u>.

The terms and provisions of this Plan are self-executing on the Effective Date.

DATED  June 24, 2011                      Respectfully submitted

                                          Eagles Crest Leasing Group 1, LLC

                                          By: <u>*/s/ John R. Pratt*</u>
                                              John R. Pratt, its Manager

Prepared by:
Jeffrey D. Goetz, Esq., IS #9999366
Bradshaw, Fowler, Proctor & Fairgrave, P.C.
801 Grand Avenue, Suite 3700
Des Moines, IA 50309-8004
515/246-5817
515/246-5808 FAX
goetz.jeffrey@bradshawlaw.com

General Reorganization Counsel for Eagles Crest Leasing Group 1, L.L.C.,
Debtor and Debtor in Possession and Plan Proponent